IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

LINDA PLEMONS aka
Linda Plemons Buechler,

          Plaintiff,

v.                                                              CIVIL ACTION NO. 2:03-0418

DOUGLAS Q. GALE, et al.,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court are: (1) the defendants' Motion for Summary Judgment [Docket 67]; (2) the plaintiff's Cross Motion for Summary Judgment [Docket 70]; and (3) the defendants' Motion to Exclude Discovery and Evidence Relating to Jerry Lipscomb [Docket 72]. For the following reasons, the court **GRANTS** the defendants' Motion for Summary Judgment and **DENIES** the plaintiff's Motion for Summary Judgment. Because the court's order does not rely on the discovery and evidence relating to Jerry Lipscomb, the defendants' Motion to Exclude is **DENIED** as **MOOT**.

**I. Background**

The undisputed facts are thoroughly recited in this court's prior opinion, *Plemons v. Gale*, 298 F. Supp. 2d 380 (S.D. W. Va. 2004), so I will simply provide a summary here. The plaintiff, Linda Plemons, and her business partner, Jerry Lipscomb, purchased the subject property from Beverly Allen on August 9, 1999. After Ms. Plemons refinanced the property through Capital State

Bank on February 17, 2000, she believed that the bank was paying the real estate taxes on the property through an escrow account.  Ms. Plemons was mistaken, and neither she nor the bank has paid real estate taxes on the subject property since the refinancing.  On November 13, 2000, the Sheriff of Kanawha County sold a tax lien on the subject property to the defendant, Advantage 99 TD (Advantage), at the Sheriff's annual tax sale of delinquent property.  After acquiring the tax lien, Advantage conducted a title examination that revealed the identities of parties having an interest in the subject property.  Advantage then tendered a report to the clerk of the County Commission of Kanawha County, West Virginia identifying those parties to be notified and requesting that the clerk prepare and serve notice to redeem on those parties.

On January 16, 2002, the clerk issued notices to the parties at the addresses listed in Advantage's report by certified mail return receipt requested.  At the time the clerk mailed the notice to redeem in January, 2002, Ms. Plemons lived at 405 Quarry Pointe in Charleston, West Virginia.  None of the notices sent to Ms. Plemons, Jerry Lipscomb, or the occupants of the subject property resulted in a signed acknowledgment of receipt, and all of these notices were eventually returned unclaimed.  When no party redeemed the subject property by the close of the redemption period, the clerk issued a deed to Advantage and Advantage recorded the deed.  On November 22, 2002, Advantage conveyed the subject property to defendant Douglas Q. Gale by a quitclaim deed which he has since recorded.

Ms. Plemons has filed the instant action to have the tax sale deed set aside pursuant to § 11A-4-4 of the West Virginia Code.  Section 11A-4-4(a) permits a party entitled to notice to bring an action to set aside a tax sale deed if she was not served with notice as statutorily required and if she did not have actual knowledge that such notice was given to others in time to protect her interests.

2

Section 11A-4-4(b) allows a plaintiff to set aside a tax sale deed when she proves by clear and convincing evidence that the tax lien purchaser failed to give constitutionally adequate notice.

The plaintiff originally petitioned the Circuit Court of Kanawha County, West Virginia to set aside a deed to her property that the defendants obtained through West Virginia's tax sale procedures. The defendants timely removed the action to this court which has diversity jurisdiction pursuant to 28 U.S.C. § 1332. On, January 13, 2004, this court granted summary judgment in Ms. Plemons' favor after finding that she had not received constitutionally adequate notice of her right to redeem the subject real property. Advantage 99 TD, the tax lien purchaser, and Douglas Q. Gale, who acquired the deed from Advantage, appealed the court's ruling. On February 3, 2005, the United States Court of Appeals for the Fourth Circuit vacated the judgment of this court and remanded this case for further proceedings consistent with its opinion, captioned *Plemons v. Gale*, 396 F.3d 569 (4th Cir. 2005).

## II. Analysis

### A. Issues Remaining on Remand

On remand, the Fourth Circuit has instructed this court to consider: (1) the defendants' efforts to search the publicly available county records after the mailings were returned as undeliverable; and (2) to determine whether Plemons' proper address would have been ascertainable from such a search. *Plemons v. Gale*, 396 F.3d 569 (4th Cir. 2005). I will address these two questions in order.

As to the first inquiry, the Fourth Circuit clearly instructed that "reasonable diligence required Advantage to search all publicly available county records once the prompt return of the mailings made clear that its initial examination of the title to the Echo Road property had not netted

3

Plemons' correct address." *Id.* at 578. The Fourth Circuit concluded that "unfortunately, the record in this case does not disclose what efforts, if any, Advantage made to search public documents," and remanded the case for resolution of this question. *Id.*

In my original order, I concluded that "after the mailing notice was returned unclaimed, Advantage took none of these actions and *made no further inquiry* prior to publishing notice." *Plemons*, 298 F. Supp. 2d at 390. (emphasis added). In their motion for summary judgment, the defendants state that they "examined records maintained by the Clerk and the Sheriff of Kanawha County in preparing [their] report to the clerk." This December, 2001 search, however, was not repeated upon the return of the undelivered notice. That is, the defendants did not examine these records again after learning that Ms. Plemons had not received the original mailed notice. Thus, I **FIND** that the defendants made no further efforts to locate Ms. Plemons after the initial notices were returned as undeliverable.

The question of whether the defendants re-examined the publicly available county records following the return of the notice does not end the required analysis on remand. The Court of Appeals also directed this court to answer a second question: "whether Plemons' proper address *would have been* ascertainable from such a search." *Id.* at 578 (emphasis added). This second inquiry focuses on the result of the search, instead of whether the process provided to Ms. Plemons was constitutionally adequate.

The defendants have recently re-examined the publicly available county records in preparation for their pending motion for summary judgment. The defendants' motion contends that Ms. Plemons' correct address, namely, 405 Quarry Pointe, has never appeared in the public records, and Ms. Plemons does not dispute this assertion. Accordingly, I conclude that her address was not

4

"ascertainable" by a search of the public records after the mailings were returned as undeliverable. I therefore **FIND** that no genuine issue of material fact remains and **GRANT** the defendants' motion for summary judgment.

**B. Additional Concerns**

I have followed the instruction of the Court of Appeals as set out above and found the facts required to answer the two inquiries it posed. Having done so, I have entered summary judgment in favor of the defendants. Although I have disposed of this dispute by final order in accordance with the law as announced by the Court of Appeals, I continue this writing to express my respectful, and, I trust, principled disagreement with certain aspects of the Fourth Circuit's opinion.

I am puzzled by each of the two inquiries I was ordered to consider upon remand. First, I am unable to understand why the Court of Appeals believes that a re-examination of the public records is sufficient to satisfy the requirements of due process. Second, I am confused as to how the result of any follow-up examination of the public records would be relevant to a due process analysis.

When the initial notices were returned as undeliverable, Advantage knew that Ms. Plemons had not received actual notice and that her property rights would be extinguished by the impending issuance of the tax deed. In the original summary judgment order, I held that once Advantage knew that Ms. Plemons had not received the notice, due process required Advantage to undertake further inquiry to determine her whereabouts. The appeals panel majority embraced this finding, and noted in its remand order that "[w]hen a party required to give notice *knows* that a mailed notice has, for some reason, failed to inform a person holding a property interest of the impending deprivation, the notice does not pass constitutional muster." *Plemons*, 396 F.3d at 573. The majority further stated that this court "properly held that the reasonable diligence standard mandated by *Mullane* and its

5

progeny required some follow up effort here." *Id.* Instead of finding that Advantage should have expanded its search beyond the public records, however, the Court of Appeals concluded that "reasonable diligence required Advantage to search all publicly available county records once the prompt return of the mailings made clear that its initial examination to the title of the Echo Road property had not netted Plemons' correct address." *Id.* at 578.

As the defendants explain in their pending motion for summary judgment, they "examined records maintained by the Clerk and the Sheriff of Kanawha County in preparing [their] report to the clerk." This first title examination occurred in December, 2001, and the defendants' initial efforts are clearly explained in the record as it appeared before the Fourth Circuit on appeal. See, Defendants' Memorandum of Law [Docket 15] at 8; Defendants' Brief on Due Process [Docket 24] at 3. A re-examination of the same county records would have been a mere gesture. As the Supreme Court noted in *Mullane*, "when notice is a person's due, process which is a mere gesture is not due process." *Mullane*, 339 U.S. at 315.

I am further puzzled by the second subject of inquiry mandated by the Court of Appeals. I think it immaterial whether the defendants would have actually ascertained Ms. Plemons' address upon a re-examination of the public records. I believe that the only relevant inquiry is to ask what process would be undertaken by a reasonable person under the specific circumstances of the case. The result obtained does not speak to the reasonableness of the method of inquiry. The question of what process is due is distinct from what the process would actually reveal. As the Supreme Court noted in *Fuentes v. Shevin*, "[t]o one who protests against the taking of his property without due process of law, it is no answer to say that in his particular case due process would have led to the same result . . . ." 407 U.S. 67, 86 (1972) (quoting *Coe v. Amour Fertilizer Works*, 237 U.S. 413,

6

424 (1915)).

The test for what attempt at notice meets due process requirements was simply stated by the United States Supreme Court in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950). In *Mullane,* the Court held that, prior to any action affecting an interest in life, liberty, or property protected by the due process clause, a state must provide "notice *reasonably* calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (emphasis added). Significantly, the Court reasoned that "[t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Id.* at 315 (emphasis added). Thirty-three years later in *Mennonite Board of Missions v. Adams*, the Court further explained that mailing notice is required when a party's address can be "ascertained through *reasonably* diligent efforts," but that "extraordinary efforts" are not required. 462 U.S. 791, 798 n.4 (1983). In this case, the Court of Appeals summarized *Mullane* and its progeny by extrapolating the following core principle: "reasonable efforts designed to 'actually inform' a party with a property interest of possible deprivation of that interest remain the *touchstone* of constitutionally adequate notice." *Plemons*, 396 F.3d at 577 (emphasis added). Thus, after the Court's decision in *Mennonite*, the process due prior to a tax sale is "notice reasonably calculated" to inform those parties who hold "legally protected property interests" whose names and addresses are "reasonably ascertainable" by "reasonably diligent efforts." *Id.*

Under West Virginia law, this due process inquiry creates a conflict of interest because the party charged with providing this constitutionally required notice is also the tax lien purchaser, who has a countervailing interest in profiting from a property owner's failure to redeem. This conflict

7

of interest makes it imperative that courts strictly scrutinize the efforts of a tax lien purchaser to ensure that they are "such as one desirous of actually informing the absentee" might reasonably adopt. *Mullane*, 306 U.S. at 315.

Instead of re-examining the public records and retracing its earlier, fruitless steps, I respectfully assert that Advantage *reasonably* could have employed several simple, inexpensive and efficient means to determine Ms. Plemons' proper address. I suggested, in my prior order, that Advantage could have simply called Ms. Plemons on the telephone, as she was listed in the local telephone directory throughout the notice period.[1] Advantage could have asked the tenants living at the subject property for help locating Ms. Plemons. Finally, I noted that Advantage could have made inquiry to others holding an interest in the property, such as Ms. Plemons' mortgagee.[2]

---

[1] The relevant April, 2001 phone book contained a listing for Linda and Michael Buechler at "215 Woodbridge Drive." The June, 2001 Charleston, West Virginia Polk city directory listed her address as both "917 Echo Road," and "215 Woodbridge Drive." Despite the fact that these listings gave outdated addresses, Ms. Plemons asserts that the defendants could have called her at the listed telephone numbers and the call would have either forwarded to her cell phone or reached her at her residence. In her most recent motion for summary judgment, Ms. Plemons disputes the Fourth Circuit's determination that calling these numbers would have been an "exercise in futility." *Id.* at 577. In fact, in her reply brief, Ms. Plemons specifically argues that the "Fourth Circuit's opinion incorrectly recited that the published phone numbers were not valid."

[2] In fact, other courts have held that reasonable diligence requires the tax lien purchaser to contact the mortgagee bank, tenants of the subject property, or telephone numbers listed in local directories. See *Scott v. Seek Lane Venture, Inc.*, 605 A.2d 942, 951 (Md. Ct. Sec. App. 1992) (holding that there is a duty to check articles of incorporation of defunct corporation for identity and address of directors); *Nichol v. Howard*, 684 A.2d 861, 866-67 (Md. Ct. Spec. App. 1996) (concluding that upon return of the notice, appellee was on notice that appellants might not live at the address in question and holding that appellee should have made contact with the mortgagees identified in the mortgage contained in the chain of title); *Kester v. Ives*, 960 P.2d 865 (Okla. Ct. App. 1998 (holding that where no attempts were made to contact the tenants of the subject property, "the attempt to give notice to Kester was not reasonably calculated to apprise him of the action to be taken against his property"); *L. Brayton Foundry Bldg., Inc., v. Santilli*, 676 A.2d 1364, 1365-66 (R.I. 1996) (holding that a correct address could have been determined by checking telephone directory); But see *Elizondo v. Read*, 588 N.E.2d 501, 504 (Ind. 1992) (checking telephone directories is not required).

In my prior opinion, I ultimately found it unnecessary to reach the question of whether Advantage acted *reasonably* because after the mailed notice was returned unclaimed, Advantage took no action. Advantage made no further inquiry prior to publishing notice. Inaction in the face of a constitutional requirement of *reasonably* diligent efforts could not, I thought, satisfy the requirements of due process.

According to *Mullane*, *Mennonite*, and the balancing tests set out in well known cases such as *Matthews v. Eldridge*, due process offers flexible protection that must be tailored to the circumstances of each case. 424 U.S. 319 (1976). In addition to being fact-specific, I think of due process as necessarily contemporary in nature. As Justice Frankfurter noted:

> "Due Process," unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place, and circumstances. Expressing as it does in its ultimate analysis respect enforced by law for that feeling of just treatment which has been evolved through centuries of Anglo-American constitutional history and civilization, "due process" cannot be imprisoned within the treacherous limits of any formula . . . . Due process is not a mechanical instrument. It is not a yardstick. It is a process. It is a delicate process of adjustment inescapably involving the exercise of judgment by those whom the Constitution entrusted with the unfolding of the process.

*Joint Anti-Fascist Committee v. McGrath*, 341 U.S. 123, 162-63 (Frankfurter, J., concurring).

In the "time, place, and circumstances" of this case, one who actually wanted to inform Ms. Plemons that her house was to be conveyed because of a failure to pay roughly $3,000 in taxes and fees would not have looked for her in the dusty corners of the Kanawha County record room. In the age of telephones, internet search engines, online newspapers, online people-finders, and readily available credit reports, most people can easily find someone. Thus, if a reasonable person were charged with the duty of locating Ms. Plemons in the relatively small city of Charleston, West

Virginia, it is my belief that he would be likely to employ "Google" to find her name, call information to learn her telephone number, contact her lending bank, or call her ex-husband. Instead, Advantage searched the public records for Ms. Plemons' address and mailed written notices to two of the addresses contained therein.[3] When the notices were found to be undeliverable, Advantage did nothing further. I continue to believe that those efforts failed to meet the constitutional standards of due process.

### III. Conclusion

Section 11A-4-4 of the West Virginia Code allows an interested party to set aside a tax sale deed if that party proves by clear and convincing evidence that the tax sale purchaser failed to give constitutionally adequate notice. In the tax sale context, notice is constitutionally adequate when the purchaser makes a reasonably diligent effort to provide the interested party with actual notice prior to the issuance of a tax sale deed. When notice sent by certified mail is returned unclaimed, the reasonable diligence standard requires the purchaser to make further inquiry reasonably calculated to locate the interested party's correct address.

In the context of this case, the Court of Appeals has interpreted reasonable diligence as requiring an "examination (or re-examination) of all available public records when initial mailings have been promptly returned as undeliverable." *Plemons*, 369 F.3d at 577. Because Ms. Plemons' Quarry Pointe address was not "ascertainable" from the public records I **FIND** that she is not entitled to set aside the tax sale deed now held by Advantage's successor in interest, Douglas Q. Gale. For

---

[3] Although Advantage sent three separate mailed notices addressed to Linda Plemons, two were sent to the Echo Road property. One of the notices was mailed to 913 Echo Road, which is the address listed in the relevant deeds, and one was sent to 917 Echo Road, which is the mailing address of the subject property.

the reasons stated herein, the court **GRANTS** the defendants' Motion for Summary Judgment [Docket 67] and **DENIES** the plaintiff's motion for summary judgment [Docket 70]. Because the court's order does not rely on the discovery and evidence relating to Jerry Lipscomb, the defendants' Motion to Exclude [Docket 72] is **DENIED** as **MOOT**. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party, and **DIRECTS** the Clerk to post this published opinion at http://www.wvsd.uscourts.gov.

                ENTER:     July 27, 2005

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

James T. Cooper
Cooper & Glass
108 Hills Plaza
Charleston, WV 25312
For Plaintiff Linda Plemons

Edward P. Tiffey
P.O. Box 6397
Charleston, WV 25362
For Defendants Douglas Q. Gale and Advantage 99 TD